# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 5D2024-1853
LT Case No. 2021-CA-004707

_____

SHAMYLIA MURPHY, as Personal
Representative for the Estate of
Sherita Shavon Murphy-Gray,

 Appellant,

 v.

HERITAGE II HOLDINGS, LLC,
and HERITAGE FLORIDA
PROPERTY HOLDINGS, INC.,

 Appellees.

_____

On appeal from the Circuit Court for Duval County,
James H. Daniel, Judge.

Lydia S. Zbrzeznj and Nicholas T. Zbrzeznj, of Southern Atlantic
Law Group, PLLC, Winter Haven, for Appellant.

Kevin S. Rabin, of Three Rivers Legal Services, Inc., Gainesville,
Amicus Curiae, for Florida Housing Umbrella Group, in support
of Appellant.

Michael Fox Orr, Loreyn P. Raab, and John W. Leonard, of Orr
Cook, Jacksonville, for Appellees.

June 13, 2025

JAY, J.

The trial court entered a summary judgment based on the impact rule. Because the impact rule does not apply to this case, we reverse and remand for further proceedings.

I.

For about a year, Sherita Shavon Murphy-Gray ("Decedent") lived in a rental property that was owned and managed by Appellees ("Heritage"). Soon after moving from the property, she suffered a cardiac arrest. She later filed negligence claims against Heritage, alleging that Heritage failed to lawfully maintain the property. She claimed that the hazardous living conditions she experienced caused—*inter alia*—bodily injury, medical expenses, pain and suffering, mental anguish, and physical impairment. She passed away while her case was pending. Her estate ("Estate") replaced her as the plaintiff.

Heritage moved for a summary judgment. The motion alleged that none of the "maintenance issues" or "dangerous conditions" raised in the complaint "physically impacted Decedent." Instead, they "caused Decedent emotional distress." Citing the impact rule, Heritage argued that this purported absence of physical contact barred Estate's recovery for emotional or mental injuries.

The trial court granted Heritage's motion. It found that the pertinent facts were "largely not in dispute." The rental property "continually experienced plumbing problems" and "electrical fluctuations and outage." "The plumbing problems resulted in raw sewage frequently backing up in [Decedent's] bathtub and toilet and sand in the running water." "Often, she and her family were unable to use the toilets or shower in the home." "The electrical problems stemming from improper wiring caused arcing behind the walls and the electrical panel box resulting in electrical outages and periodic smoke." One power outage caused Decedent's "insulin medication to go bad due to lack of refrigeration." Heritage "received citations for multiple code violations related to these conditions."

Decedent "had a preexisting heart condition and later suffered a cardiac arrest." Estate presented evidence showing that "the prolonged exposure to the unsafe and unsanitary conditions in the

residence caused significant mental anguish and emotional distress which, in turn, exacerbated her preexisting heart condition and 'contributed substantially' to producing the cardiac arrest."

Turning to the law, the court described the impact rule as "easily stated, but often difficult to apply." The rule generally requires a plaintiff to show a physical impact before being able to collect damages for emotional distress. The court explained that impact can be "slight" and "it makes no difference if any physical injury directly resulted from the touching." The court noted that the rule does not apply in cases where an impact or touching took place.

Importantly, the court found there was "*[n]o doubt*" that Decedent "inhaled into her body microscopic particles from the smell of the raw sewage and smoke from the wires." The court was also certain that "parts of [Decedent's] body actually touch[ed] the sand in the water and heat from the faulty electrical wires." But the court ruled that such contacts were not enough to overcome the rule, writing that "to hold this evidence is sufficient to establish an impact for purposes of recovering emotional harm stretches that concept beyond the outer limits this court is prepared to accept."

The court acknowledged that "Florida courts have found ingesting or inhaling chemicals or substances, even microscopic in nature, can constitute an impact." However, the court reasoned that Decedent's case was distinguishable because although Decedent "may have inhaled the odor from the raw sewage . . . there is nothing to support a finding that somehow a substance or particle from the odor permanently remained in her body." The court reiterated that "the sand in the water and the heat from the faulty wiring did technically come into contact with [Decedent's] body." But the court "doubt[ed]" that "emotional harm from merely feeling or touching sand in water or heat from faulty wiring behind a wall, without more, are the type of bodily contacts that could or should ever be sufficient to satisfy the impact rule." In the court's view, ruling otherwise "would take the concept of 'slight' impact to an extreme and render the impact rule a virtual nullity."

3

Ultimately, the court ruled that "even in a light most favorable to" Estate, the facts "do not rise to the level of an impact sufficient to satisfy the requirements of the rule." Therefore, it granted a summary judgment for Heritage.

## II.

We review summary judgments de novo. *Moore v. Toub*, 398 So. 3d 1151, 1154 (Fla. 5th DCA 2024). A summary judgment is proper when the movant shows "there is no genuine dispute as to any material fact" and entitlement "to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). "The court views the evidence in a light most favorable to the non-moving party, and a genuine dispute occurs when the evidence would allow a reasonable jury to return a verdict for that party." *Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1278 (Fla. 5th DCA 2023).

A plaintiff who suffers a physical impact may recover "for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself." *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007) (quoting *Eagle-Picher Indus., Inc., v. Cox*, 481 So. 2d 517, 526 (Fla. 3d DCA 1985)). Conversely, the "impact rule" bars recovery when "the plaintiff claims mental or emotional damages but *has not sustained any physical impact or contact.*" *Id.* The supreme court adopted the rule as a safeguard against "fictitious or speculative claims" arising "from purely emotional distress." *See R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995).

"When an impact or touching has occurred *the rule has no application.*" *Willis*, 967 So. 2d at 850; *see also Seybold v. Clapis*, 966 F. Supp. 2d 1312, 1315 (M.D. Fla. 2013) (describing the impact rule's name as oxymoronic). The trial court noted as much at the hearing on Heritage's motion, telling Estate that "if you have an impact, we are done," and adding, "we don't need to get any further than that."

Furthermore, the impact can be "rather slight." *See Willis*, 967 So. 2d at 850 (quoting *Zell v. Meek*, 665 So. 2d 1048, 1050 n.1 (Fla. 1995)). "The essence of impact . . . is that the outside force or substance, no matter how large or small, visible or invisible, and

4

no matter that the effects are not immediately deleterious, touch or enter into the plaintiff's body." *Id.* (quoting *Eagle-Picher Indus., Inc.*, 481 So. 2d at 527).

Many courts have recognized that inhaling or otherwise absorbing a harmful substance qualifies as an "impact." *See, e.g.*, *Plummer v. United States*, 580 F.2d 72, 76–77 (3d Cir. 1978) (inhalation of minute tubercle bacilli); *Rowley v. WMT Hous., LLC*, No. 5:22-cv-29, 2022 WL 19264115, at *4 (M.D. Fla. July 11, 2022) (inhalation and ingestion of mold spores); *Jerue v. Drummond Co.*, No. 8:17-cv-587, 2018 WL 7461683, at *19 (M.D. Fla. Apr. 19, 2018) (exposure to gamma radiation); *Merry v. Westinghouse Elec. Corp.*, 684 F. Supp. 847, 852 (M.D. Pa. 1988) (exposure to hazardous materials); *Eagle-Picher Indus., Inc.*, 481 So. 2d at 527 (inhalation of asbestos). Here, beyond Decedent "actually touching the sand in the water and heat from the faulty electrical wires," the trial court found there was "*[n]o doubt*" that Decedent "inhaled into her body microscopic particles" from the raw sewage and "smoke from the wires." The court deemed these impacts to be legally deficient, but that conclusion is at odds with the supreme court's broad definition of impact. Once the trial court found that Decedent inhaled particles from the raw sewage and smoke from the faulty electric wires, the court should not have applied the impact rule.

## III.

The supreme court has emphasized that the impact rule "*has no application*" when "an impact or touching has occurred." *Willis*, 967 So. 2d at 850. In turn, an impact occurs when an "outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch[es] or enter[s] into the plaintiff's body." *Id.* (quoting *Eagle-Picher Indus., Inc.*, 481 So. 2d at 527). Applying this law to the facts found by the trial court, Heritage is not entitled to a summary judgment under the impact rule.

REVERSED and REMANDED for further proceedings.

MAKAR and SOUD, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____